[Sac. No. 724.  Department One.—January 30, 1901.]

ETTA  HEDGE et al.,  Respondents, v. J. H. WILLIAMS,
Appellant.

ACTION FOR DEATH—EXPLOSION IN DISTILLATE TANK—NEGLIGENCE OF
SERVANT OF INDEPENDENT CONTRACTORS.—A firm of dealers in hard-
ware, tinware, plumbing, etc., engaged by the defendant to re-
pair a tank used to store distillate on his fruit farm, are in-
dependent contractors, and not servants of the defendant, and
the defendant is not liable to an action for the death of his
employee caused by the explosion of the tank through the neg-
ligence of a servant employed by such contractors.

ID.—DUAL CAPACITY OF DEFENDANT'S MANAGER—MEMBERSHIP IN FIRM
REPAIRING TANK.—The fact that the manager of defendant's firm
acted in a dual capacity, and was also a member of the firm
employed to repair the tank, and instructed their servant to
repair the same, cannot change the contractual relations be-
tween the parties, nor make the defendant responsible for the
negligence of such servant, who, as the servant of the firm,
stood in the position of an independent contractor, and was not
the servant of the defendant.

ID.—VERDICT OF JURY—ACTING CAPACITY OF REPAIRER OF TANK—MAT-
TER OF LAW—PROVINCE OF APPELLATE COURT.—The verdict of the
jury in favor of the plaintiff against the defendant is not con-
clusive that the servant engaged in repairing the tank was act-
ing in the capacity of a servant of the defendant where the evi-
dence shows without conflict that he was the employee of the
firm engaged to repair the tank.  In such case it is the province
of the appellate court to decide as matter of law what the facts
prove.

ID.—EVIDENCE—DECLARATIONS OF DECEASED—RES GESTAE.—In an ac-
tion for the death of defendant's servant the declaration of the
deceased made to third parties after the accident, constituting
no part of the res gestae, are not admissible against the plain-
tiff.

APPEAL from a judgment of the Superior Court of Tulare
County and from an order denying a new trial.  W. B. Wal-
lace, Judge.

The facts are stated in the opinion of the court.

J. F. Boller, and Bradley & Farnsworth, for Appellant.

An employer is not responsible for the negligence of a contractor engaged in an independent calling, nor for the negligence of servants employed by him in such calling. (Civ. Code, sec. 2009; Shearman and Redfield on Negligence, sec. 81; *Williams v. Fresno etc. Co.*, 96 Cal. 14, 15[1]; *Barton v. McDonald*, 81 Cal. 265; *Smith v. Belshaw*, 89 Cal. 427, 430, 431; *Ahern v. McGeary*, 79 Cal. 44; *Bennett v. Truebody*, 66 Cal. 509, 511[2]; *Frassi v. McDonald*, 122 Cal. 400, 402; *Callan v. Bull*, 113 Cal. 593; *Berg v. Parsons*, 156 N. Y. 109[3]; *Harrison v. Collins*, 86 Pa. St. 153[4]; *Hexamer v. Webb*, 101 N. Y. 377, 383.[5])

Roth & McFadzean, J. E. Shuey, and Charles G. Lamberson, for Respondents.

The verdict necessarily implied that the jury found from the evidence that the work was done under the supervision of the defendant's superintendent, and must be accepted as correct. (*Tompkins v. Montgomery*, 123 Cal. 219; *Bennett v. Truebody*, 66 Cal. 509[6]; 16 Am. & Eng. Ency. of Law, 206.)

GAROUTTE, J.—This action was brought by the surviving wife and minor children, for damages occasioned by the death of Joseph A. Hedge, the husband and father. Defendant appeals from the judgment and order denying his motion for a new trial.

The material facts in the case are as follows: Defendant was the owner of a large fruit farm near the town of Porterville. One A. H. Schultz was the superintendent of defendant in the management of the farm. A large tank, used to store distillate, was located upon the premises. Schultz discovered that the tank was leaking, and directed that the distillate be withdrawn therefrom, which was done, with the exception of possibly an inch in depth at the bottom of the tank. Schultz was also a member of the firm of Schultz & Wilson, dealers in hardware, tinware, plumbing, etc., in the town of Porter-

[1] 31 Am. St. Rep. 172.
[2] 56 Am. Rep. 117.
[3] 66 Am. St. Rep. 542.
[4] 27 Am. Rep. 699.
[5] 54 Am. Rep. 703.
[6] 56 Am. Rep. 117.

ville.   One Fontaine was in the employ of Schultz & Wilson, directly in charge of that portion of the business, including the repairing of tanks, etc., and had made this particular tank some years in the past.   Schultz instructed Fontaine to repair the leak in the tank, and took him with his implements of labor to the place where the tank was located.   The deceased, Hedge, was the servant of defendant, and was engaged in fixing a casing surrounding the tank.   Upon the arrival of Fontaine at the tank he climbed  upon it, called  for a lighted  lantern and a string, opened the manhole, let down the lantern within, and immediately a disastrous explosion occurred.   Hedge, Schultz, and  Fontaine were  all seriously  injured.   Hedge died; the others recovered.   It will be seen from the foregoing state-ment that the facts are neither many nor complicated; yet the dual capacity in which Schultz was acting—his Jekyll and Hyde character, as it were—adds an additional element of in-terest to the case.

It is claimed by appellant that Fontaine stood in the posi-tion of an independent contractor.   In other words, that Schultz & Wilson stood as independent contractors in repair-ing the tank and that Fontaine was their servant.   It is next claimed that if Fontaine was not the servant of Schultz & Wilson, he was the servant of defendant, and Hedge, being his fellow-servant, Fontaine's negligence could not form the basis of a recovery by Hedge's relatives.   Of course this con-tention is sound, unless defendant was guilty of negligence in selecting Fontaine to do the work.   We return to the first proposition urged.   Did Fontaine stand in the position of an independent contractor?   If he did, then the defendant is not liable, for independent contractors alone must bear the dam-age occasioned by their negligence.

After viewing this evidence from every side, we are brought to the conclusion that Fontaine, in repairing this tank, was not the servant of defendant and that his negligence in caus-ing the explosion was not the negligence of defendant.   First let us eliminate Schultz from the case in his dual capacity, and deal with him alone as a member of the firm of Schultz & Wilson.   Then we have defendant personally going to the firm

of Schultz & Wilson, and requesting that a man be sent out to repair the leaking tank. Defendant may go one step further and request that Fontaine be sent out to repair the tank. Assuredly, Fontaine, under these circumstances, would be the servant of Schultz & Wilson, and not the servant of defendant. For nine years Fontaine had been in the employ of Schultz & Wilson, and as their employee he went with his tools to repair the tank. The firm had the power to discharge him at any moment, even at the very moment when the soldering iron was hot in his hand and the solder ready to be applied. He was paid by the firm for his labor. Defendant could hold the firm liable if his work was negligently done. Looking at the case from this angle Fontaine was not the servant of defendant. As the servant of Schultz & Wilson he stood in the position of an independent contractor; and the facts fit the case of *Bennett v. Truebody,* 66 Cal. 509,[7] where the owner of a building employed a plumber to repair the water pipes; and this plumber was held to be an independent contractor.

Again, let us eliminate Schultz from the case in his character as a dealer in hardware, etc. Then we have him as the superintendent of defendant, requesting the firm of Wilson & Co. to repair this tank; or we may go one step further and say he requested the firm to send out their man Fontaine to repair the tank. Under these circumstances Fontaine still would be the servant of Wilson & Co., and to no degree the servant of defendant. In the early English case cited in *Bennett v. Truebody, supra,* where a butcher hired a drover to drive a bullock, the drover was held to be an independent contractor, and not the servant of the butcher. Coleridge, J., said: "The thing done is the driving. The owner makes the contract with the drover that he shall drive the beast, and leaves it under his charge, and then the drover does the act. The relation of master and servant, therefore, does not exist between them." It can hardly be claimed that the firm of Wilson & Co. were the servants of the defendant in repairing the tank; yet if they were not defendant's servants, then their employee, Fontaine, certainly was not.

---

[7] 56 Am. Rep. 117.

It seems to follow from the foregoing assumptions that, in the eyes of the law, the dual capacity in which Schultz was acting in no way affects the merits of this litigation. As to the law, the case would be the same if he were alone a member of the hardware firm, or alone the superintendent of the defendant. Schultz's dual capacity in no way changes the contractual relations between these various parties. Indeed, in no aspect of the case were there any contractual relations existing between the defendant and Fontaine as to the repairing of the tank. Defendant could not discharge him from the work. Only Schultz & Wilson could do so. Defendant was not paying him for his labor, for Schultz & Wilson were paying him. There being no contractual relation between Fontaine and defendant, it is impossible in law that Fontaine should be the servant of defendant.

Section 2009 of the Civil Code provides: "A servant is one who is employed to render personal service to his employer, otherwise than in the pursuit of an independent calling, and who in such service remains entirely under the control and direction of the latter, who is called his master." Schultz & Wilson were not the servants of defendant, tested by this section. Defendant could not be termed their master, for they were doing this work in the pursuit of an independent calling; and this being so, they were independent contractors, and Fontaine was their servant. (See Shearman and Redfield on Negligence, sec. 81.) Adam & Kibbe employed McGearey to take down a flagstaff from their building. In an action for damages brought by a third party for injuries received in taking down the flagstaff, it was held that McGearey was an independent contractor, and alone liable. (*Ahern v. McGearey,* 79 Cal. 44.) That case is similar in principle to the case at bar. (See, also, *Callan v. Bull,* 113 Cal. 593.) Upon the part of respondent it is insisted that the verdict of the jury is conclusive as to the capacity in which Fontaine was acting in repairing the tank. This contention could only be sound if there was a substantial conflict in the evidence. But here, as to this particular branch of the case, there is no conflict in the evidence. And upon a state of facts of that character it becomes

the duty of the appellate court to decide, as matter of law, what the facts prove.

The declarations of Hedge, the deceased, made to third parties after the accident, form no part of the *res gestae,* and should not have been admitted against these plaintiffs. The case being remanded, it becomes unnecessary to consider the legal soundness of the instructions given to the jury upon the point.

For the foregoing reasons the judgment and order are reversed and the cause remanded.

Harrison, J., and Van Dyke, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank, and filed the following opinion thereon on the second day of March, 1901:

BEATTY, C. J.—I dissent from the order denying a rehearing. The conclusion that Fontaine was the servant of independent contractors is fully sustained by the record, but it does not dispose of the case. Respondents charged negligence in the selection of a person to do this work who was unacquainted with the properties of distillate and its gases. Their contention is, that in any operation involving the use of dangerous means or the handling of dangerous explosives the employer of an independent contractor is bound to exercise care in the selection of a person who knows the danger and how to guard against it. They cite a number of authorities to sustain this proposition—cases in which the employer has been held liable for injuries caused by blasting, etc., by incompetent contractors.

In view of the evidence in this record, which shows that both Schultz and Fontaine were entirely ignorant of the danger involved in lowering a lighted lantern into a large tank recently filled with distillate, and still containing about a gallon of that substance in liquid form, and therefore necessarily surcharged with its vapors or gas, it is manifest that the question of negligence is not disposed of by merely holding

that the work was being done by independent contractors, if it is true that the employer in such cases is liable for want of care in selecting a proper person to do the work. I think, therefore, that the cause should not be remanded for a new trial, leaving this question open. Its decision is necessarily involved in the ultimate determination of the controversy, and in my opinion, is necessarily involved in the disposition of this appeal.